**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 17, 2003**

**Charles R. Fulbruge III**
**Clerk**

**REVISED JANUARY 5, 2004**
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-10195
_____

BOMBARDIER AEROSPACE EMPLOYEE
WELFARE BENEFITS PLAN,

Plaintiff - Appellee,

versus

FERRER, POIROT AND WANSBROUGH; ET ALS,

Defendants,

FERRER, POIROT AND WANSBROUGH;
STEVEN MESTEMACHER,

Defendants - Appellants.

---------------------
Appeal from the United States District Court for the Northern
District of Texas, Dallas Division
---------------------

Before JOLLY and WIENER, Circuit Judges and WALTER,[*] District Judge.

WIENER, Circuit Judge:

Defendants-Appellants Ferrer, Poirot & Wansbrough, P.C. (the "law firm") and Steven Mestemacher appeal the district court's grant of the summary judgment motion of Plaintiff-Appellee Bombardier Aerospace Employee Welfare Benefits Plan (the "Plan"), an ERISA-governed, self-funded employee welfare benefit plan, to enforce the terms of the Plan's reimbursement provision against the law firm and Mestemacher. They also appeal the district court's denial of their respective motions to dismiss the Plan's action for lack of subject matter

---

[*] District Judge for the Western District of Louisiana, sitting by designation.

jurisdiction and for failure to state a claim, as well as its denial of their joint motion for summary judgment.  We affirm.

## I.  FACTS AND PROCEEDINGS

A.  Background

The Plan was established by Bombardier Aerospace to provide managed care services for its employees and their dependents.[1] Mestemacher was an employee of Bombardier Aerospace and a participant in the Plan.  After he was injured in an automobile accident, he sought $13,643.63 from the Plan for medical expenses.  The Plan paid Mestemacher's medical expenses in that amount, subject to a "Reduction, Reimbursement and Subrogation" provision contained in the Plan's documents.  That provision gave the Plan "the right to recover or subrogate 100% of the Benefits paid...by the Plan for Covered Persons to the extent of...[a]ny judgment, settlement, or payment made or to be made, because of an accident, including but not limited to insurance."  The documents further specified that "attorneys fees and court costs are the responsibility of the participant, not the Plan."

Mestemacher retained the law firm on a one-third contingent fee basis to seek recovery from the tortfeasor responsible for the automobile accident.  After negotiating a $65,000 settlement, the law firm received the settlement payment on Mestemacher's behalf and placed the funds in a trust account at Bank of America in the law firm's name.

---

[1]  See 29 U.S.C. § 1002(1).

2

B.    The Instant Litigation

This action arises out of the Plan's efforts to obtain reimbursement for the funds advanced to Mestemacher. The Plan filed suit in district court against the law firm, Mestemacher, and Bank of America before Mestemacher's settlement funds were ever disbursed to him from the law firm's trust account at Bank of America.[2] In its efforts to recover the funds that it had advanced to Mestemacher for medical expenses, the Plan sought (1) the imposition of a constructive trust over $13,643.63 of the funds being held for Mestemacher in the law firm's trust account, (2) a declaration that the Plan is entitled to ownership of that amount out of the settlement funds that remained in the trust account, (3) an order directing the law firm and Bank of America to execute any instruments necessary to transfer legal title of the "converted property" to the Plan, and (4) a temporary restraining order and a preliminary injunction prohibiting the law firm from disbursing the share of the settlement funds claimed by the Plan.

In an agreed order, the law firm consented to hold $18,500.00 of the settlement proceeds in its trust account, an amount more than sufficient to satisfy the Plan's reimbursement demand. The law firm nevertheless maintained that it was entitled  to one-third of the proceeds of the settlement ($21,666.66) plus costs ($302.24), by virtue of its contingent fee agreement with Mestemacher. The law firm

---

[2] Bank of America was voluntarily dismissed from this suit after settling with all parties.

and Mestemacher each filed a motion to dismiss for lack of subject matter jurisdiction, contending that § 502(a)(3) of ERISA does not provide a cause of action against an entity like the law firm, which is neither a plan fiduciary nor a signatory to the plan, and does not authorize the Plan's claim for a constructive trust over funds not in the possession of its participant, Mestemacher.

Agreeing with the Plan's assertion that it was seeking "equitable relief" within the contemplation of § 502(a)(3), the district court accepted subject matter jurisdiction over the Plan's action and denied Mestemacher's and the law firm's motions to dismiss. Agreeing further that the terms contained in the Plan's documents provide a right of reimbursement, the district court granted summary judgment in favor of the Plan and ordered the law firm to transfer to the Plan the sum of $13,643.63 from the settlement proceeds being held in its trust account. This judgment further ordered that nothing be deducted from the Plan's funds for attorneys' fees and costs.

Citing our opinion in Sunbeam-Oster Company, Inc. Group Benefits Plan for Salaried and Non-bargaining Hourly Employees v. Whitehurst,[3] the district court observed that the Plan contained "clear and unambiguous reimbursement provisions, including a provision allowing the Plan reimbursement from third party beneficiaries such as settlement proceeds."[4] As for whether the Plan had stated a claim

_____

[3] 102 F.3d 1368 (5th Cir. 1996).

[4] All parties agree that the Plan's language unambiguously provides for a right of reimbursement and subrogation. As neither

4

under § 502(a)(3), the court noted that the Plan did not seek to impose *in personam* liability on any of the defendants, but merely sought the *in rem* imposition of a constructive trust over funds in the trust account. Thus, the district court concluded, the Plan's claim was for "appropriate equitable relief" under § 502(a)(3) and fell comfortably within that jurisdictional grant. Finally, the court refused to apply either the Texas or the federal version of the common fund doctrine to block the Plan's recovery, noting that "the Plan expressly provides that attorney's fees and court costs are the responsibility of Mestemacher and not the Plan." Final judgment was entered in the Plan's favor, and Mestemacher and the law firm timely filed a notice of appeal.

## II. ANALYSIS

A. Standard of Review

We review *de novo* both a grant of a motion to dismiss and a grant of a motion for summary judgment.[5] In our *de novo* review of a district court's ruling on a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), we apply the same standard as does the district court: "[A] claim may not be dismissed unless it appears certain that

party seeks a construction of the Plan's terms, we need not engage in application of the deference principles articulated by the Supreme Court in Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989).

[5] See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000).

5

the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief."[6]

B. <u>Subject Matter Jurisdiction</u>

To determine whether the district court properly exercised subject matter jurisdiction over the instant action, we first must decide whether § 502(a)(3) authorizes the Plan's suit for a constructive trust over the funds held in the law firm's trust account.[7] The law firm and Mestemacher assert two bases for holding that § 502(a)(3) does not authorize the Plan's suit. They first contend that, because the law firm was not a signatory to the Plan, it is not a fiduciary; thus the Plan cannot maintain an action for equitable relief against the law firm under § 502(a)(3). They contend secondly that the Plan's action for a constructive trust is not one "typically available in equity" and thus falls outside § 502(a)(3)'s jurisdictional grant.

**1. The "Universe of Possible Defendants" under § 502(a)(3).**

Section 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which

---

[6] <u>Benton v. United States</u>, 960 F.2d 19, 21 (5th Cir. 1992); <u>see</u> <u>also</u> <u>St. Paul Mercury Ins. Co.</u>, 224 F.3d at 440 n.8 ("[T]he central issue [in reviewing a motion to dismiss] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.").

[7] <u>See</u> <u>Bauhaus USA, Inc. v. Copeland</u>, 292 F.3d 439, 442 (5th Cir. 2002)("ERISA grants the federal courts "exclusive jurisdiction of civil actions under this title brought by . . . [a] fiduciary."). The parties agree that the Plan is governed by ERISA and that the Plan is a "fiduciary" under ERISA.

6

violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."[8]  The law firm and Mestemacher contend that this authorization is contingent on the existence of a professional or contractual relationship between the Plan and the particular defendant that is subject to suit.  In other words, according to them, an entity must owe a duty to an ERISA plan before it can properly be named as a defendant in a § 502(a)(3) suit for equitable relief.  Because it is not a signatory of the Plan, insists the law firm, it owes no fiduciary duty to the Plan, and thus no cause of action can be maintained against it under § 502(a)(3).[9]  We disagree.

Although neither we nor the Supreme Court has squarely addressed the question whether a plan participant's or beneficiary's attorney who possesses disputed settlement funds on his client's behalf can be subject to suit under § 502(a)(3), the Supreme Court has ruled that § 502(a)(3) liability is not dependent on an entity's status as a plan fiduciary.  In <u>Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.</u>,[10] the Court squarely held that § 502(a)(3) authorizes suit

---

[8] 29 U.S.C. § 1132(a)(3).

[9] For purposes of this case, a person is a plan fiduciary to the extent that he exercises discretionary authority or control over the management or administration of the plan or its assets, or renders investment advice to the plan for compensation.  <u>See</u> 29 U.S.C. § 1002(21)(A).  The parties agree that the law firm is not a plan fiduciary.

[10] 530 U.S. 238 (2000).

against a non-fiduciary "party in interest" to a transaction prohibited under § 406(a).[11] In so holding, the Court rejected the Seventh Circuit's holding that no cause of action exists under § 502(a)(3) absent a substantive provision of ERISA expressly imposing a duty on the party being sued. The Court observed that § 502(a)(3) "admits of no limit (aside from the 'appropriate equitable relief' caveat...) on the universe of possible defendants."[12] Indeed, the Court noted that, in contrast to other provisions of ERISA which expressly delineate the entities subject to suit,[13] "§ 502(a)(3) makes no mention at all of which parties may be proper defendants."[14] This is because "502(a)(3) itself imposes certain duties, and therefore...liability under that provision does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued."[15]

---

[11] See id. at 241. ERISA both imposes a general duty of loyalty on plan fiduciaries, § 406(a); 29 U.S.C. § 1104, and, "categorically bar[s] certain transactions deemed 'likely to injure the pension plan.'" § 406(a)(1); 29 U.S.C. § 1106.

[12] Id. at 244-246.

[13] For example, the following ERISA provisions explicitly delineate the entities subject to suit: (1) "§ 409(a), 29 U.S.C. § 1109(a)("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable");" and (2) "§502(l), 20 U.S.C. § 1132(1)(authorizing imposition of civil penalties only against a 'fiduciary' who violates part 4 of Title I or 'any other person' who knowingly participates in such a violation)." Id. at 246-47.

[14] Id. at 246.

[15] Id. at 245.

The litigation in <u>Harris Trust</u> arose out of a soured business deal between an ERISA plan and a "party in interest." National Investment Services of America ("NISA") had been hired by the plan's administrator to act as an investment manager for the plan.[16] Because it had "discretionary control" over plan assets, NISA qualified as a plan fiduciary.[17] Salomon Smith Barney, Inc. ("Salomon") furnished the plan with broker-dealer services at the direction of the fiduciaries, thus qualifying under § 3(14) as a "party in interest."[18] During the relevant time, Salomon sold to the plan, through NISA, interests in several motel properties that later turned out to be worthless.[19]

On learning of the nature of this transaction, the plan's administrator and its trustee filed suit against Salomon under § 502(a)(3), claiming, <u>inter alia</u>, "that NISA, as plan fiduciary, had caused the plan to engage in a <u>per se</u> prohibited transaction under § 406(a) in purchasing the motel interests from Salomon."[20] Salomon countered that § 502(a)(3) authorizes suit "only against the party expressly constrained by 406(a)," namely, the fiduciary who caused the party to enter into the prohibited transaction, and not the

---

[16] <u>See id.</u> at 242–43.

[17] <u>Id.</u> at 243.

[18] <u>See id.</u> at 242.

[19] <u>Id.</u> at 243.

[20] <u>Id.</u>

"counterparty to the transaction."[21]  The Seventh Circuit agreed with Salomon, but the Supreme Court reversed for the reasons stated above.[22] Therefore, even though, in the instant litigation, the law firm is not a "party in interest," as that term is defined by ERISA,[23] the Supreme Court's reasoning in <u>Harris Trust</u> influences us to conclude today that § 502(a)(3) authorizes a cause of action against a non-fiduciary, non-"party in interest" attorney-at-law when he holds disputed settlement funds <u>on behalf of</u> a plan-participant client who is a traditional ERISA party.  As <u>Harris Trust</u> makes clear, an entity need not be acting under a duty imposed by one of ERISA's substantive provisions to be subject to liability under § 502(a)(3).

To this end, we note that the law firm's reliance on the Seventh Circuit's opinion in <u>Health Cost Controls of Illinois, Inc. v. Washington</u>[24] in support of the law firm's contrary position — that an entity must be a plan fiduciary before it can be properly named as a defendant in a § 502(a)(3) action — is badly misplaced.  The question before the <u>Health Cost</u> court was not, as here, which entities can be <u>subject to suit</u> under § 502(a)(3), but rather which entities are

---

[21] <u>Id.</u>

[22] <u>See id.</u> at 244-45.

[23] The term "'party in interest'...encompasses those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." <u>Harris Trust</u>, 530 U.S. at 242.  Finding nothing in the record that would suggest that the law firm is an entity likely to be favored by the plan's fiduciaries, we will assume that the law firm is not a "party in interest."

[24] 187 F.3d 703 (7th Cir. 1999).

entitled to bring suit under § 502(a)(3).  In Health Cost, the Seventh

Circuit addressed, inter alia, whether the assignee of an ERISA plan's

reimbursement claims qualified as an ERISA fiduciary and thus as a

proper plaintiff in a suit for a constructive trust under § 502(a)(3).

Although the court noted that a lawyer hired by an ERISA plan to bring

suit on the plan's behalf is not an ERISA fiduciary, and thus not a

proper plaintiff to a § 502(a)(3) action, it held that, because an

assignee of a plan's reimbursement claims exercises greater discretion

over the plan's assets than does the plan's lawyer, the assignee

qualified as a fiduciary and thus as a proper plaintiff under §

502(a)(3).[25]

Without a doubt, the text of § 502(a)(3) places limits on the

proper plaintiffs to a suit for equitable relief:  As the language of

that provision expressly states, a civil action for equitable relief

may be brought only by a "participant, beneficiary, or fiduciary" of

an ERISA plan.[26]  Congress did not see fit, however, to include a

similar limitation on the set of proper defendants to a § 502(a)(3)

action, and we decline the law firm's invitation to impose such limits

judicially today.[27]

---

[25] See id. at 709.

[26] See Harris Trust, 530 U.S. at 248 ("502(a) itself demonstrates Congress' care in delineating the universe of plaintiffs who may bring certain civil actions.").

[27] The other cases cited by the law firm in support of its proposition that it must be a plan fiduciary to be a proper defendant under § 502(a)(3) are equally inapposite.  The issue in each of these cases was whether the plan could properly maintain an

11

In sum, the law firm's status as a non-fiduciary would have some relevance to this case if the Plan were seeking to saddle the lawyers with personal liability for the breach of a fiduciary duty. As it stands, however, the only action that the Plan asserts is one for equitable in rem relief under § 502(a)(3). As liability under that provision does not depend on whether a substantive provision of ERISA imposes a duty on the particular defendant subject to suit, we hold that the law firm, as counsel for the plan participant and stake holder of specifically identifiable settlement funds in a trust account — on that beneficiary's behalf — fits comfortably within the "universe of possible defendants" subject to suit under that provision.

## 2. "Appropriate Equitable Relief" under § 502(a)(3)

The law firm and Mestemacher contend next that, despite styling its action as one for a "constructive trust" over the funds contained in the law firm's trust account, the Plan actually seeks to impose

action against the defendant-attorney for either breach of contract or breach of fiduciary duty — not for equitable relief under § 502(a)(3). See Southern Council of Indus. Workers v. Ford, 83 F.3d 966, 969 (8th Cir. 1996)(subject matter jurisdiction exists over plan's claim for breach of fiduciary duty against beneficiary's attorney who signed the plan's subrogation agreement); Witt v. Allstate Ins. Co., 50 F.3d 536, 538 (8th Cir. 1995)(beneficiary's insurer is not a fiduciary subject to liability to the plan for breach of fiduciary duty); Hotel Employees & Rest. Employees Int'l Union Welfare Fund v. Gentner, 50 F.3d 719, 721 (9th Cir. 1994)(beneficiary's attorney is not liable for breach of fiduciary for failing to reimburse plan prior to distributing settlement funds to the beneficiary); Chapman v. Klemick, 3 F.3d 1508, 1508-09 (11th Cir. 1993)(beneficiary's attorney is not a fiduciary subject to liability to the plan for breach of fiduciary duty).

personal liability on the defendants to enforce Mestemacher's contractual reimbursement obligation to the Plan for the amount he received in benefits. Thus, they argue, the Plan's suit is essentially legal in nature — as distinguished from equitable — and falls outside the scope of "appropriate equitable relief" permitted by § 502(a)(3). The Plan responds — correctly, we conclude — that because it seeks to recover specifically identifiable funds that are in the constructive possession and the legal control of the participant but belong in good conscience to the Plan, its action for a constructive trust in no way seeks to impose personal liability on either defendant. Instead, the Plan continues, it seeks relief that indeed is equitable in nature and thus authorized by § 502(a)(3).

In <u>Mertens v. Hewitt Associates</u>, the Supreme Court interpreted "appropriate equitable relief" under § 502(a)(3) to include only "those categories of relief that were typically available in equity."[28] Subsequently, the Court, in <u>Great-West Life & Annuity Insurance Co. v. Knudson</u>, elaborated on the distinction between "legal" and "equitable" relief, stating that "a plaintiff could seek restitution in <u>equity</u>, ordinarily in the form of a <u>constructive trust</u> or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."[29] On

---

[28] 508 U.S. 248, 256 (1993).

[29] 534 U.S. 204, 213 (2002)(citations omitted). In <u>Knudson</u>, the plan administrator sought to recover benefits paid to a

13

the other hand, reasoned the Court, if "'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains," "[the plaintiff's] claim is only that of a general creditor, and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'"[30]  In such an instance, the plaintiff is seeking a <u>legal</u> remedy —— the imposition of <u>personal</u> liability on the defendant to pay a sum of money to which the plaintiff is owed —— so his claim falls outside § 502(a)(3)'s jurisdictional grant.[31]

Recently, in <u>Bauhaus USA, Inc. v. Copeland</u>,[32] we interpreted <u>Mertens</u> and <u>Knudson</u> in the context of a plan administrator's suit to recover benefits previously paid to a plan beneficiary, after settlement funds from a third party tortfeasor were received on behalf of the beneficiary.  The administrator of the plan sought the

beneficiary following the latter's receipt of settlement funds from a third-party tortfeasor.  See <u>Knudson</u>, 534 U.S. at 208.  The funds, however, had been placed in a Special Needs Trust for the beneficiary to provide for her medical care pursuant to California law.  See <u>id.</u> at 207-08.  The Supreme Court rejected the plan administrator's argument that it sought equitable relief under § 502(a)(3), stating that "the funds to which [the plan] claims an entitlement under the Plan's reimbursement provision . . . are not in the [beneficiary's] possession." <u>Id.</u> at 214.  As the plan essentially sought "the imposition of personal liability [upon the beneficiary] for the benefits" it had conferred, the Court held that its claim was legal, rather than equitable, in nature and thus fell outside the scope of relief authorized by § 502(a)(3). <u>Id.</u>

[30] <u>Id.</u> at 213-14 (citing RESTATEMENT (FIRST) OF RESTITUTION § 215 (1937)).

[31] See <u>id.</u> at 210 (citing <u>Mertens</u>, 508 U.S. at 256.)

[32] 292 F.3d 439 (5th Cir. 2002).

imposition of a constructive trust over the portion of the funds that had been placed in the registry of the Mississippi Chancery Court, pursuant to the terms of a tort settlement agreement, to satisfy any liens against the funds.[33]  Focusing on the language in Knudson regarding the beneficiary's possession of the disputed funds, the panel majority in Bauhaus found the facts of the case before it legally indistinguishable from those considered by the Supreme Court in Knudson.[34]  The court observed that the disputed funds in Knudson were outside the "possession and control" of the beneficiary, having been placed in a Special Needs Trust to cover the beneficiary's medical expenses.[35] Reasoning that funds placed in the court registry were just as much beyond the "possession and control" of the beneficiary as those placed in a Special Needs Trust, the panel majority held that the plan's suit did not lie in equity and was therefore unauthorized by § 502(a)(3).[36]

Although the facts of Knudson and Bauhaus resemble those in Mestemacher's case in several respects, those cases are significantly distinguishable from Mestemacher's.  To verify this conclusion, one need only compare the facts of these three cases by answering the relevant three-part inquiry:  Does the Plan seek to recover funds (1)

---

[33] See id. at 441.

[34] See id. at 445.

[35] See id.

[36] See id.

15

that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the defendant beneficiary?  In both <u>Knudson</u> and <u>Bauhaus</u>, as in the instant case, the benefit plans sought to recover funds from a specifically identifiable corpus of money that they had paid out previously as benefits.  Likewise, in each case, the plan's terms contained an express, unambiguous reimbursement provision which made the disputed funds "belong in good conscience" to the plan.  It is, however, the third element of the inquiry –– the defendant-beneficiary's "possession and control" over the disputed funds –– that distinguishes <u>Knudson</u> and <u>Bauhaus</u> from the case before us today.

In <u>Knudson</u> and <u>Bauhaus</u>, the beneficiary had neither actual nor constructive possession or control over the funds.  In <u>Knudson</u>, the funds had been placed in a Special Needs Trust, as mandated by California law, to provide for the beneficiary's medical care, and the trustee was totally independent of the plan beneficiary.  Similarly, in <u>Bauhaus</u>, the funds had been deposited in the state court's registry in anticipation of an interpleader action to determine their ownership. Obviously, that court was totally independent of the plan beneficiary.  Here, in stark contrast, the funds that the Plan is seeking to recover belong to the participant and are simply being held in a bank account in the name of the participant's attorneys, who are indisputably his agent.  Unlike the beneficiaries in <u>Knudson</u> and <u>Bauhaus</u>, the Plan's participant, Mestemacher, has ultimate control over, and thus <u>constructive</u> possession of, the disputed funds.  The

16

law firm and Mestemacher concede that the law firm is merely holding the funds in its trust account on Mestemacher's behalf —— as Mestemacher's agent —— and is legally obligated to disburse the funds to Mestemacher the moment he directs their release. This crucial distinction is more than sufficient to warrant a finding that the Plan's action is indeed "equitable" in nature.

The Seventh Circuit's recent opinion in Administrative Committee of the Wal-Mart Stores, Inc. Associated Health and Welfare Plan v. Varco offers further support for our determination that the Plan's action for a constructive trust lies in equity.[37] In Varco, the ERISA plan sought to enforce the provisions of a subrogation clause against a participant through imposition of a constructive trust over settlement funds from a third party tortfeasor.[38] The participant's attorney had accepted delivery of the funds from the tortfeasor on the participant's behalf prior to the plan's filing suit and, after taking out an amount sufficient to cover his fees, the lawyer had placed the remaining funds in a reserve account in the participant's name.[39] Noting that (1) the participant had "control" over the disputed funds, (2) the funds were "identifiable, and [had] not been dissipated," and (3) the funds, "in good conscience," belonged to the plan, the Seventh

_____

[37] 338 F.3d 680 (7th Cir. 2003).

[38] See id. at 683–84.

[39] See id. at 684.

17

Circuit held that the plan's action for a constructive trust was equitable in nature and therefore authorized by § 502(a)(3).[40]

In making the same determination today, we remain unpersuaded by the contention voiced by the law firm during oral argument to the effect that Mestemacher lacks "possession and control" over the one-third share of the $18,500 contained in the trust account to which the law firm asserts ownership by virtue of its contingent fee agreement with Mestemacher. This assertion ignores Mestemacher's pre-existing contractual reimbursement obligation to the Plan, which requires him to reimburse the Plan the full amount of the benefits that he had received from the Plan and to do so out of any third-party recovery, <u>without deduction for attorney's fees and costs</u>. This pre-existing reimbursement obligation to the Plan precluded Mestemacher from contracting away to the law firm that which he did not own himself, namely, the right to all or any portion of the $13,643.63 that rightfully belonged to the Plan. In essence, Mestemacher could not create a greater right in the funds by virtue of entering the contingent fee arrangement with the law firm than Mestemacher had himself.

In addition, Mestemacher's contingent fee agreement does <u>not</u> restrict his obligation to compensate the law firm solely to the proceeds of his recovery. Rather, that agreement creates an <u>in personam</u> obligation, requiring Mestemacher to pay counsel an amount

---

[40] <u>See id.</u> at 687-88.

<u>equivalent to</u> one-third of his recovery. Mestemacher is personally responsible to the law firm for its attorneys' fees in an amount equal to one-third of his recovery. The fact that he may have to satisfy some part or even all of this personal obligation out of his own pocket in no way diminishes his pre-existing reimbursement obligation to the Plan vis-à-vis the funds recovered from his tortfeasor. We are satisfied that neither Mestemacher's contingency fee agreement with the law firm nor the location of the settlement funds in the trust account affects his legal "possession and control" over the disputed $13,643.63. Our conclusion in this regard is consistent with Judge Posner's opinion for the Seventh Circuit in <u>Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan v. Wells</u>,[41] in which that court held, on substantially similar facts, that a plan administrator's § 502(a)(3) suit for a constructive trust over settlement funds presumed to be held in escrow by the participant's attorney "nestle[d] comfortably" within "ERISA's concept of equity."[42]

Having closely examined the substance of the relief sought in the case before us, we are convinced that, in its efforts to recoup the amount paid to Mestemacher in benefits, the Plan does not seek to impose personal liability on either Mestemacher or his counsel. Thus, we hold the Plan's requested relief — the imposition of a constructive trust over specifically identifiable settlement funds

---

[41] 213 F.3d 398, 401 (7th Cir. 2000).

[42] <u>Id.</u>

19

held in the trust account of the law firm as agent for Mestemacher —— to be equitable in nature.  Accordingly, we further hold that § 502(a)(3) authorizes the Plan's claim for relief, and we affirm the district court's exercise of subject matter jurisdiction over this action.[43]

## C.  Actual Fraud and Unjust Enrichment

We turn next to the question whether a showing of either actual fraud or unjust enrichment, or both, on the part of Mestemacher and the law firm is required before a constructive trust can be imposed on the disputed funds.  Noting correctly that ERISA does not specify the elements of a constructive trust in a § 502(a)(3) action,[44] the law firm and Mestemacher maintain that this lacuna in the statutory text should be filled by Texas law.  Under that State's law, a plaintiff seeking a constructive trust must establish, inter alia, (1)

---

[43] We recognize that our holding today is at variance with the Ninth Circuit's recent opinion in Westaff (USA), Inc. v. Arce.  See 298 F.3d 1164 (9th Cir. 2002). In Westaff, the Ninth Circuit held that a plan administrator's suit to recoup benefits paid to a beneficiary upon the beneficiary's receipt of settlement funds from a third party tortfeasor was essentially legal in nature, even though the beneficiary had placed the funds in an escrow account in the beneficiary's name pending a determination of to whom the money was owed.  See id. at 1167.  Acknowledging that the disputed funds held in escrow were "specifically identifiable," the Ninth Circuit nevertheless held that the funds were "a legitimate personal injury settlement to which the beneficiary is entitled" and that the administrator's action was essentially "one for money damages" falling outside the jurisdictional grant of § 502(a)(3).  Id.  We perceive that decision to depart from the Supreme Court's opinions in Mertens and Knudson, and from our own precedent in Bauhaus, so we decline to follow the Ninth Circuit's more restrictive view of the scope of "appropriate equitable relief" under § 502(a)(3).

[44] See 29 U.S.C. § 1132(a)(2).

20

the breach of a fiduciary relationship or, alternatively, actual fraud, and (2) unjust enrichment of the wrongdoer.[45]

In recognition of ERISA's overarching aim of national uniformity, we have consistently held that any hiatus in ERISA's text must be filled by application of federal common law rather than the law of any particular state.[46] Accordingly, Texas law is not directly applicable

___

[45] See, e.g., Haber Oil Co. v. Swinehart, 12 F.3d 426, 437 (5th Cir. 1994). We recognize in passing that our precedent interpreting Texas law as it relates to constructive trusts has not been altogether consistent. In some cases, we have interpreted Texas law as requiring a showing of actual fraud or breach of fiduciary duty prior to imposition of a constructive trust. See id. at 437 (the elements of a constructive trust under Texas law include, inter alia, "breach of a fiduciary relationship, or in the alternative, actual fraud....")(citing In re Monnig's Dept. Stores, Inc. v. Azad Oriental Rugs, Inc., 929 F.2d 197, 201 (5th Cir. 1991)). More recently, we held that it was sufficient under Texas law for a plaintiff to show merely constructive fraud, as opposed to actual fraud or wrongdoing. See Burkhart Grob Luft und Raumfakrt GmbH & Co. v. E-Systems, Inc., 257 F.3d 461, 469 (5th Cir. 2001)(the elements of a constructive trust under Texas law include a showing of either actual or constructive fraud)(citing Haber Oil Co., Inc. v. Swinehart, 12 F.3d 426, 437 (5th Cir. 1994)). If indeed constructive fraud is all that is required under Texas law, then the district court clearly did not err in not making a finding of fraud, for the requirement of "constructive fraud" is "merely an expression of the idea that a constructive trust may arise in the absence of fraud." SCOTT ON TRUSTS § 462 (4th ed. 2001). Nevertheless, because some confusion exists as to this issue, and because the issue was not briefed by the parties, we will assume arguendo for purposes of the instant analysis that Texas law requires a showing of actual fraud or breach of fiduciary duty prior to imposition of a constructive trust.

[46] See Jamail, Inc. v. Carpenters Dist. Council of Houston Pension & Welfare Trusts, 954 F.2d 299, 303 (5th Cir. 1992)("Both the legislative history and the case law pursuant to ERISA validate our application of federal common law to ERISA."); see also Rodrique v. Western and Southern Life Ins. Co., 948 F.2d 969, 971 (5th Cir. 1991)("Congress intended that federal courts should create federal common law when adjudicating disputes regarding ERISA.").

to the Plan's claim, and the Plan will not be required to establish actual fraud and unjust enrichment —— unless, that is, some basis exists for concluding that these elements are required under a federal common law standard for the imposition of a constructive trust.

Although the law firm and Mestemacher argue alternatively that we should incorporate the Texas law elements of actual fraud and unjust enrichment into the federal common law rule, federal common law —— like gaps in ERISA's statutory provisions —— cannot be defined solely by reference to the law of but a single state. This is especially true when adherence to the strictures of Texas law would require the Plan to establish actual fraud on the part of either Mestemacher or the law firm, an element that has never been required by the Supreme Court or this Circuit. Indeed, as discussed in the preceding section, Knudson requires a § 502(a)(3) plaintiff seeking a constructive trust to show only the existence of "money or property identified as belonging in good conscience to the plaintiff [that can] clearly be traced to particular funds or property in the defendant's possession," and makes no mention of the necessity of showing actual fraud or wrongdoing on the part of the defendant.[47] Neither does Bauhaus, which contains our most recent discussion of the circumstances in which a constructive trust may be imposed under §

---

[47] Knudson, 534 U.S. at 213.

22

502(a)(3), suggest that a showing of actual fraud or wrongdoing is required.

Further, as did the Knudson Court in its efforts to define the contours of "appropriate equitable relief" under § 502(a)(3), we look to "standard current works, such as Dobbs, Palmer, Corbin, and the Restatements" in ascertaining the federal common law rule to be applied.[48]  Of those works, two that have squarely considered whether a showing of fraud or wrongdoing is required for imposition of a constructive trust have concluded that such a trust may properly be imposed in the absence of fraud.[49]  Based on these expressions, as well as the absence of any indication in our precedent or that of the Supreme Court to the effect that federal common law requires that actual fraud be established before a constructive trust can be imposed under § 502(a)(3),[50] we hold today that federal common law does not

---

[48] Id. at 716.

[49] SCOTT ON TRUSTS § 462 (4th ed. 2001)("[T]here are numerous situations in which a constructive trust may be imposed in the absence of fraud."); 1 DOBBS LAW OF REMEDIES § 4.3(2)(2d ed. 1993)("Sometimes it is still said that the constructive trust applies only to misdealings by fiduciaries or in cases of fraud . . . but this is a misconception.").

[50] In considering whether federal common law permits imposition of a constructive trust in the absence of a showing of actual fraud or other wrongdoing, the Seventh Circuit has also answered the question in the negative.  See Health Cost Controls, 187 F.3d at 711.  Writing for the panel in Health Cost, Judge Posner noted that although the Ninth Circuit appears to believe that the imposition of a constructive trust in an ERISA case is permissible only when there has been a breach of trust, FMC Medical Plan v. Owens, 122 F.3d 1258, 1261 (9th Cir. 1997), it has given no reason for this belief and there

23

require a plaintiff in a § 502(a)(3) action to show that he was the victim of actual fraud or wrongdoing as a prerequisite to obtaining a constructive trust.[51]

As for the additional requirement of Texas law that the defendant must have been unjustly enriched at the expense of the plaintiff, it is axiomatic that a party who retains funds "belonging in good conscience to another" is unjustly enriched at that other party's expense. None disputes that the Plan's terms unambiguously state a right to recover benefits that it has previously paid, up to the full extent of any settlement proceeds obtained by the participant or beneficiary. Thus, the disputed funds "belong in good conscience" to the Plan, and the law firm's and Mestemacher's continued retention of these funds would unjustly enrich them at the Plan's expense.

is no basis for it either in ERISA or in the principles of equity. Granted that in times of yore the constructive trust was available only as a remedy against trustees and other fiduciaries, 1 Dobbs, supra, § 4.3(2), p. 597, there is nothing to suggest that ERISA's drafters wanted to embed their work in a time warp.

Id.

[51] As today we hold that actual fraud is not an element required in a § 502(a)(3) action for a constructive trust, we do not reach the question whether the Plan has demonstrated actual fraud on the part of Mestemacher and the law firm. We note, however, that at least one other circuit has observed, on nearly identical facts, that the refusal of a participant's lawyer to turn over settlement proceeds that rightfully belonged to the plan constituted wrongdoing on the part of the lawyer. See Wal-Mart Stores, Inc. Assoc. Health and Welfare Plan v. Wells, 213 F.3d 398, 401 (7th Cir. 2000)(lawyer's refusal to hand over settlement check to which plan claimed entitlement by virtue of its unambiguous reimbursement provision was "clearly wrongful").

24

Accordingly, even if we assume arguendo that unjust enrichment is a prerequisite, the Plan has produced sufficient evidence that the defendants would be unjustly enriched, entitling the Plan to have a constructive trust imposed on the disputed settlement funds.

**D. Common Fund Doctrine**

Finally, we consider whether the Plan's claim is subject to either the Texas or the federal "common fund" doctrine. There is no substantive difference between the Texas and federal versions of this doctrine; in essence, both provide that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."[52] "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense."[53] In the instant case, the district court found this doctrine inapplicable to the Plan's claim for benefits because the language of the Plan expressly provided —— long before Mestemacher was injured and long

---

[52] Boeing Co. v. Van Gemert, 444 U.S. 47, 478 (1980); compare Lancer Corp. v. Murillo, 909 S.W.2d 122 (Tex. App. — San Antonio 1995, no writ)("Under the [Texas] common fund doctrine, the court may allow reasonable attorney's fees to a litigant who, at his own expense, has maintained a suit which creates a fund benefitting other parties as well as himself.")(cites omitted).

[53] Boeing, 444 U.S. at 478; compare Lancer Corp., 909 S.W.2d at 126 ("The common fund doctrine is based on the principle that those receiving the benefits of the suit should bear their fair share of the expenses.")(citing Trustees v. Greenough, 105 U.S. 527, 532-37 (1881); Knebel v. Capital Nat'l Bank, 518 S.W.2d 795, 799-801 (Tex. 1974)).

before he retained the law firm on a contingent fee basis — that "[a]ttorney's fees and court costs are the responsibility of the participant, not the Plan." We agree.

Although we have yet to address whether equitable fee sharing is warranted under the common fund doctrine when the Plan language expressly provides to the contrary, we held in Walker v. Wal-Mart Stores, Inc. that, when a plan's terms give it the right to recover benefits "to the extent of any and all" settlement payments, but fail to specify who bears the responsibility for fees and costs, the plan is nevertheless entitled to full recovery of the amount of the benefits paid without offset for fees and costs.[54] Here, the Plan's terms not only give it the right to recover benefits "to the extent of any and all" settlement payments, but explicitly state that the participant must bear the fees and costs associated with his tort action. Our holding in Walker thus supports our determination here that neither the federal nor Texas common fund doctrine may be invoked to prevent or reduce the Plan's recovery of the funds that it advanced

---

[54] 159 F.3d 938, 940 (5th Cir. 1998). Interpreting the plan's "'any and all' language," the Walker panel held that such language "plainly means the first dollar of recovery (any) and 100% recovery (all) of the funds received by the plaintiff in the settlement, up to the full amount of the benefits paid." Id. The panel further noted that the fact that the plan did not "specifically mention attorneys' fees or set out detailed distribution procedures d[id] not constitute silence or ambiguity on behalf of the plan," reasoning that ERISA plans should not be labeled "silent or unambiguous" simply for lack of "technical precision." Id.

to Mestemacher, up to the full amount of his recovery from the tortfeasor.

The Seventh Circuit's <u>Varco</u> opinion further supports this conclusion.[55] The <u>Varco</u> court refused to apply either the Illinois or federal common fund doctrine to defeat an ERISA plan's express provision that fees and costs were the sole responsibility of the participant.[56] Considering the Illinois doctrine first, the court held that, because application of that doctrine would contradict the express terms of the Plan, it was preempted by § 514 of ERISA.[57] Turning next to the federal common fund doctrine, the <u>Varco</u> court declined to offset the plan's recovery on that basis as well, noting that application of "federal common law to override the Plan's reimbursement provision would contravene, rather than effectuate, the underlying purposes of ERISA because the express terms of the Plan provided for the appropriate distribution of attorney's fees."[58] Thus, reasoned the Seventh Circuit, the federal common fund doctrine should only be applied to offset an ERISA plan's recovery in the

---

[55] 338 F.3d 680 (7th Cir. 2003)

[56] <u>See</u> <u>id.</u> at 692-93.

[57] <u>See</u> <u>id.</u> at 690.  In addition to complete preemption under § 502(2), ERISA § 514 provides for conflict preemption when a state statute "directly conflicts with ERISA's requirements that the plans be administered, and benefits be paid in accordance with plan documents."  <u>Egelhoff v. Egelhoff ex rel. Breiner</u>, 532 U.S. 141, 150 (2001); 29 U.S.C. 1144(a).

[58] <u>Varco</u>, 338 F.3d at 692.

27

absence of controlling plan language that specifies the manner in which the costs of the underlying litigation are to be distributed.[59]

We agree with the Seventh Circuit's determination in Varco that the state and federal common fund doctrines are inapplicable when, as here, the controlling plan language clearly and unambiguously expresses that fees and cost are the sole responsibility of the participant. Accordingly, we hold that the district court correctly refused to apply either the Texas or federal common fund doctrines to allow a deduction from the Plan's recovery of a pro rata share of Mestemacher's attorney's fees and costs.

## III. CONCLUSION

We affirm the district court's exercise of subject matter jurisdiction based on ERISA § 502(a)(3) over the Plan's action for a constructive trust because it is equitable in nature. Further, because federal common law does not require a showing of actual fraud or wrongdoing as an element of imposing a constructive trust, we affirm the district court's grant of the Plan's requested relief, despite an absence of such a showing. Finally, we affirm the district court's holding that neither the federal nor Texas common fund doctrine trumps the Plan's express language specifying that all fees and costs associated with the underlying tort litigation are to be

---

[59] Id. (citing McIntosh v. Pacific Holding Co., 120 F.3d 911, 917 (8th Cir. 1997); Waller v. Hormel Foods Corp., 120 F.3d 138, 141 (8th Cir. 1997)).

28

born by the participant.  Accordingly, the district court's decision is, in all respects,

AFFIRMED.