# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2012

No. 11-40446

Lyle W. Cayce
Clerk

ACS RECOVERY SERVICES, INC.; FKI INDUSTRIES, INC.,

Plaintiffs - Appellants

v.

LARRY GRIFFIN; WILLIE EARL GRIFFIN; LARRY GRIFFIN SPECIAL
NEEDS TRUST; JUDITH GRIFFIN,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before REAVLEY, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

ACS Recovery Services, Inc. ("ACS") and FKI Industries, Inc. ("FKI")
appeal the district court's decision to dismiss their suit for equitable relief under
section 502(a)(3) of the Employee Retirement Income and Security Act of 1974
("ERISA") for lack of jurisdiction.[1]  Specifically, ACS and FKI argue that the
district court: (1) erroneously interpreted two Supreme Court cases as requiring
dismissal of their claims; (2) abused its discretion in denying their motion for a

---

[1] The procedural posture of this dismissal was the grant of summary judgment to the
Appellees; however, the decision to do so was based on the fact that ERISA does not authorize
ACS and FKI's claim for equitable relief and therefore the court lacked subject matter
jurisdiction.

default judgment against one of the defendants; (3) should have concluded that Chapter 142 of the Texas Property Code is preempted by ERISA; and (4) should have deferred to the FKI Industries Inc., Subsidiaries and Affiliates Medical Benefits Plan (the "Plan") administrator's determination of liability. We AFFIRM the district court's decision to dismiss the ERISA claims against Larry Griffin, Judith Griffin, Willie Earl Griffin (the "Trustee"), and the Larry Griffin Special Needs Trust (the "Trust") for lack of jurisdiction. As a result, we find it unnecessary to address their remaining arguments.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At the time of the automobile accident that precipitated this dispute, Larry Griffin worked for FKI and participated in the Plan. The Plan is an "employee welfare benefit plan" within the meaning of section 3(1) of ERISA, 29 U.S.C. § 1002(1). Should a Plan member be injured by a third party and recover damages for the injury, the Plan's terms require that member to reimburse the Plan for any medical benefits received.

In 2006, Larry Griffin was seriously injured in an automobile accident and received $50,076.19 in medical benefits from the Plan. He and his wife, Judith Griffin, sued the party responsible for the accident which led to a payment of $294,439.82 under a settlement funded by SAFECO, the party's insurer. The Griffins' attorney admitted that he purposefully structured the settlement "in an effort to legally avoid any equitable lien asserted by the Group Medical Policy . . . ." The state court approved the settlement, which provided for the payment of attorneys' fees, some additional medical expenses, and $40,000.00 to Judith Griffin, pursuant to the parties' allocation in a divorce settlement for Judith Griffin's loss of consortium claim. After these payments, $148,007.68 was left, which the settlement agreement provided that SAFECO would pay directly to Hartford CEBSCO. In turn, Hartford CEBSCO was required to purchase an

annuity from the Hartford Life Insurance Company to make monthly payments to the Trust, which would be used for Larry Griffin's benefit.

Because Larry Griffin failed to reimburse the Plan for the medical expenses paid by the Plan, FKI and ACS filed suit against Larry Griffin, the Trustee, and the Trust. The complaint was subsequently amended to add Judith Griffin as a defendant. The plaintiffs invoked section 502(a)(3) of ERISA as the basis for recovering the unpaid medical benefits, which allows "a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief[.]" 29 U.S.C. § 1132(a)(3)(B).

Both parties filed motions for summary judgment. The magistrate judge issued a report and recommendation denying FKI and ACS's motion for summary judgment and granting Larry Griffin, the Trust, and the Trustee's motion for summary judgment. After considering the plaintiffs' objections to the report and recommendation, the district judge adopted the magistrate judge's decision, concluding that the requested relief was unavailable under section 502(a)(3) of ERISA, and it dismissed the claims against all of the defendants.[2] The district court entered a final judgment, and FKI and ACS timely appealed.

## II.  JURISDICTION AND STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standard as the district court. *Gen. Universal Sys. Inc. v. HAL Inc.*, 500 F.3d 444, 448 (5th Cir. 2007). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The evidence must be viewed in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).

---

[2] Although Judith Griffin never moved for summary judgment, the district judge nonetheless dismissed the claims against her. As discussed below, we affirm the dismissal of ACS and FKI's claims against Judith Griffin for lack of subject matter jurisdiction.

No. 11-40446

FKI and ACS premised jurisdiction in the district court on 28 U.S.C. § 1331 as claims based on ERISA. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Although we affirm the district court's finding that ACS and FKI's claims against the Appellees must be dismissed for lack of subject matter jurisdiction, "it is familiar law that a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002).

## III.  DISCUSSION

A.     <u>Did the district court err in finding that it lacked jurisdiction over ACS and FKI's claim for equitable relief against Larry Griffin, the Trust, and the Trustee pursuant to section 502(a)(3)?</u>

Section 502(a)(3) of ERISA allows "a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief (i) to redress [violations of ERISA or the terms of the plan] or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). The Supreme Court has narrowly interpreted the term "other equitable relief" to include only "those categories of relief that were *typically* available in equity . . . ." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). Thus, if a plan or a plan's fiduciary seeks to impose personal liability on a defendant for breach of contract, we would not have jurisdiction under section 502(a)(3) because such relief was not typically available in equity. *Knudson*, 534 U.S. at 210; *see also Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439, 444-45 (5th Cir. 2002). If, however, the plan or the plan's fiduciary seeks restitution in equity in the form of a constructive trust or equitable lien, the action would fall under section 502(a)(3) because the action would be classified as equitable. *Knudson*, 534 U.S. at 213. The parties dispute whether the nature of this lawsuit is equitable or legal.

The Supreme Court has decided two cases that are instructive on this issue: *Knudson* and *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356

No. 11-40446

(2006). In *Knudson*, a benefit plan sued to recover medical benefits it had paid after the beneficiary, Janette Knudson, received a settlement from a third-party tortfeasor. 534 U.S. at 207. The plan had a reimbursement provision that required the beneficiary to reimburse the plan for any medical expenses recovered from third parties. *Id.* The plan sought an injunction and declaratory relief; however, the Court was not convinced that the nature of the action was equitable. *Id.* at 210. It noted that "petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money—relief that was not available typically in equity." *Id.* The Court pointed out that "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. "Thus, for restitution to lie in equity, the action must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Ultimately, the Court concluded that the action did not lie in equity because "the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the respondents' tort action—are not in respondents' possession." *Id.* Because the settlement order showed that the checks were paid to a special needs trust and to the Knudsons' attorney—neither of whom were named as defendants—the claim was legal, not equitable. *Id.* However, the Court specifically left open the question of "whether petitioners could have obtained equitable relief against respondents' attorney and the trustee of the Special Needs Trust . . . ." *Id.* at 220.

In *Sereboff*, the Court addressed a situation where the funds sought by the plan's fiduciary were in the defendants' possession. 547 U.S. at 362-63. After the Sereboffs filed a state tort suit to recover for injuries from an automobile

5

accident, the plan asserted a lien on the anticipated proceeds from the suit because the agreement between the plan and its beneficiary contained a reimbursement provision. *Id.* at 359-60. The plan's administrator sued the Sereboffs when they failed to reimburse the plan upon recovery from the third party. *Id.* at 360. The parties agreed that the Sereboffs would preserve the disputed funds in an investment account until the suit was resolved. *Id.*

Although the Sereboffs argued that *Knudson* prevented the plan from recovering, the Court found that the "impediment to characterizing the relief in *Knudson* as equitable is not present here" since the plan's fiduciary "sought specifically identifiable funds that were within the possession and control of the Sereboffs – that portion of the tort settlement due [the fiduciary] under the terms of the ERISA plan, set aside and preserved [in the Sereboffs'] investment accounts." *Id.* at 362-63 (internal quotation marks and citation omitted and second alteration in original). The Court distinguished *Knudson*, noting that because the plan's administrator sought recovery from a "particular fund from the defendant," the suit was equitable and could proceed pursuant to section 502(a)(3)(B)(ii). *Id.* at 363. Thus, whether the lawsuit seeking to impose a constructive trust should be characterized as legal or equitable depends on whether "money or property identified in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Knudson*, 534 U.S. at 213; *see also Sereboff*, 547 U.S. at 363.

We have established a three-part test for determining whether the relief sought is equitable within the meaning of ERISA. *See Bombardier Aerospace Emp. Welfare Benefit Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356 (5th Cir. 2003). This test asks whether the plan seeks "to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the Plan, and (3) that are within the possession and control of the *defendant beneficiary*[.]" *Id.* (emphasis added).

No. 11-40446

In *Bombardier*, a benefit plan sued one of its beneficiaries and the beneficiary's law firm—which held the proceeds from a third-party tort suit in trust on behalf of the beneficiary—to recover for medical expenses paid on the beneficiary's behalf. 354 F.3d at 350. First, we concluded that the law firm was a proper defendant because "Congress did not see fit . . . to include a . . . limitation on the set of proper *defendants* to a § 502(a)(3) action." *Id.* at 354. Next, we found that the suit was equitable in nature because all three elements of the test were met. *Id.* at 357-58. The plan sought identifiable funds that belonged in good conscience to the plan under the reimbursement provision. *Id.* at 356. The third element—that the beneficiary have control over and possession of the disputed funds—was met because the "Plan's participant . . . ha[d] ultimate control over, and thus *constructive* possession of, the disputed funds" held in trust by his attorney on his behalf. *Id.* Because the "Plan [did] not seek to impose personal liability on either [the beneficiary] or his counsel," we concluded that section "502(a)(3) authorize[d] the Plan's claim for relief." *Id.* at 358. Two other circuits have agreed that a constructive trust can be imposed on funds held by an attorney.[3] *See Longaberger Co. v. Kolt*, 586 F.3d 459, 469 (6th Cir. 2009) (holding that a plan may obtain an equitable lien against an attorney); *Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells*, 213 F.3d 398, 401 (7th Cir. 2000) (holding that a plan's action for a constructive trust over funds held in escrow by a beneficiary's attorney was equitable in nature and permissible pursuant to section 502(a)(3)).

The *Bombardier* opinion distinguished *Bauhaus*, in which we held that funds deposited in a state court's registry in anticipation of an interpleader action were not in the defendant beneficiary's actual or constructive possession or control. 354 F.3d at 356 (discussing *Bauhaus*, 292 F.3d at 445). Because the

---

[3] The Griffins' attorney was not sued in this case.

No. 11-40446

funds in *Bauhaus* were in the court's registry and thus outside of the defendant's control, we concluded that the plan was trying to impose personal liability on the defendant beneficiary, and the action could not proceed under section 502(a)(3). *Bauhaus*, 292 F.3d at 444-45. *Bombardier* also discussed *Knudson*, noting that in that case, "the funds had been placed in a Special Needs Trust, as mandated by California law, to provide for the beneficiary's care, and the trustee was totally independent of the plan beneficiary." *Bombardier*, 354 F.3d at 356.

Here, ACS and FKI argue that the district court erroneously interpreted *Knudson* as requiring dismissal for lack of subject matter jurisdiction. The district court concluded that because Larry Griffin did not have legal title to the funds, the action does not lie in equity. We agree with ACS and FKI that this case is distinguishable in one respect from *Knudson*. Here, the plaintiffs specifically named the Trustee and the Trust as defendants, which was not the case in *Knudson*. *See* 534 U.S. at 220 (leaving open the question of "whether petitioners could have obtained equitable relief against respondents' attorney and the trustee of the Special Needs Trust . . ."). However, this difference does not resolve the remaining question of whether it matters that the "defendant beneficiary" does not have actual or constructive possession or control over the funds. *See Bombardier*, 354 F.3d at 356.

In defending the district court's decision, Larry Griffin, the Trust, and the Trustee do not dispute that the first two elements of our test have been met in this case; rather, they argue that the district court's decision should be upheld because no defendant ever had "possession" of the disputed funds. Case law indicates that both actual and constructive possession satisfy the "possession" requirement of the three-part test. *See Bombardier*, 354 F.3d at 356 (constructive possession); *Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 691 (7th Cir. 2003) (actual possession). We therefore must

evaluate the issue of "possession" with respect to Larry Griffin, the Trust, and the Trustee.

### 1. *Larry Griffin*

We conclude that the third element of the *Bombardier* test has not been met with respect to Larry Griffin, as he does not have actual or constructive possession of the funds. Because the settlement agreement established a special needs trust on his behalf, Larry Griffin does not have possession or control over the money. The Trustee will use the money to provide for Larry Griffin, who was determined to be an "incapacitated person" under Texas law. *Knudson* indicates that the beneficiary of a special needs trust is not the proper party to a suit under section 502(a)(3), as he does not "possess" the funds. *See* 534 U.S. at 214. Even if we were to find that Larry Griffin had fleeting possession or control over the funds at the time of the settlement agreement, he no longer has either possession or control. Thus, ACS and FKI cannot obtain equitable relief from Larry Griffin, as a judgment in ACS and FKI's favor would make Larry Griffin personally liable for a money judgment. *See Knudson*, 534 U.S. at 214. We therefore affirm the district court's decision to dismiss ACS and FKI's claim against Larry Griffin.

### 2. *The Trustee and the Trust*

The issue of whether FKI and ACS are entitled to a constructive trust on the funds received by the Trust and the Trustee from the annuity purchased by Hartford CEBSCO is more complicated. The Trust and the Trustee do not have actual possession of the funds, because, pursuant to the settlement agreement between Larry Griffin and the third-party tortfeasor, SAFECO "assign[ed] its obligation to pay periodic payment to Hartford [CEBSCO]" which purchased an annuity from Hartford Life Insurance Company and directed payments to be made to the Trust. Thus, Hartford CEBSCO—not the Trust and the Trustee—actually possesses the annuity. Indeed, the only attachment to the

No. 11-40446

document establishing the Trust is a statement that the Trust's initial assets consist of "[f]uture periodic payments within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986 . . . ."

Further complicating the matter, because of the way a special needs trust is structured, Larry Griffin—as the beneficiary—does not currently have possession or control over the funds. Thus, applying the third prong of our three-part test in *Bombardier*, ACS and FKI cannot impose a constructive trust on funds that the defendant beneficiary does not possess or control. 354 F.3d at 356. Here, the funds are not "within the possession and control of the defendant *beneficiary*." *Id.* (emphasis added).[4]

FKI and ACS rely on *Bombardier* for the proposition that a benefit plan can recover from a third party that is holding the funds "*on behalf of* a plan-participant client who is a traditional ERISA party." *Id.* at 353. However, that is not the case here, because unlike the attorney in *Bombardier*, who was

---

[4] FKI and ACS cite two cases where circuit courts have allowed a section 502(a)(3) claim to proceed where a benefit plan sued the trustee of a trust formed to benefit the plan's beneficiary. *See Admin. Comm. for the Wal-Mart Stores, Inc. Assoc.' Health & Welfare Plan v. Horton*, 513 F.3d 1223, 1228-29 (11th Cir. 2008); *Admin. Comm. for the Wal-Mart Stores, Inc. Assoc.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 836-37 (8th Cir. 2007). In *Horton*, the Eleventh Circuit concluded that a benefit plan could use section 502(a)(3) to recover "a specifically identifiable fund in possession of a defendant." In that case, the employee beneficiary of the plan was also the conservator for her son, a "covered person" who was injured and received benefits. 513 F.3d at 1228. The court concluded that the money held by the trustee "has been identified as belonging in good conscience to the Administrative Committee by virtue of the Plan's terms, and the money can clearly be traced to a particular fund in the defendant's possession." *Id.* at 1228-29. It noted that "[t]he fact that [the trustee] holds the funds as a third party" did not defeat the plan's claim. *Id.* at 1229. That case did not involve a special needs trust or a trustee who was not herself a beneficiary.

The Eighth Circuit in *Shank* did address a special needs trust and allowed imposition of a constructive trust on funds held in that trust. 500 F.3d at 836-37. The court concluded that the suit was equitable because the plan (1) sought the "specific funds . . . owed under the terms of the plan[;] (2) from a specifically identifiable fund that is distinct from Shank's general assets—i.e., the special needs trust; and (3) that is controlled by defendant James Shank, the trustee." *Id.* at 836. However, while citing *Bombardier*, the court did not address the meaning of "defendant *beneficiary*" as discussed in that case. We are bound by *Bombardier*; these cases are inapposite.

10

found to be subject to the client's control, the Trust in this case cannot be controlled by Larry Griffin.

To get around *Bombardier*'s third element, ACS and FKI argue that Larry Griffin had fleeting possession and control over the money that went to the special needs trust when he signed the settlement agreement in the state court lawsuit. Thus, they argue that "those funds were traceable to . . . the Trust established for Larry's exclusive benefit." However, *Bombardier*'s third prong asks whether the plan seeks "to recover funds . . . that *are* within the possession and control of the defendant beneficiary[.]" *Id.* at 356 (emphasis added). The test makes no mention of whether the funds ever *were* within the possession or control of the defendant beneficiary. Thus, even if we were to find that Larry Griffin had fleeting possession of the funds, we are still bound by our prior precedent, which requires the defendant beneficiary to have either possession or control of the funds at the time that the defendant is seeking equitable relief. *Id.* Therefore, we conclude that the district court properly dismissed FKI and ACS's claim for equitable relief against the Trust and the Trustee.

B.    Did the district court err in dismissing ACS and FKI's claim against Judith Griffin?

ACS and FKI argue that the district court erroneously dismissed their claim against Judith Griffin and abused its discretion in denying their motion for a default judgment against her, as she never filed an answer despite being properly served. Judith Griffin has never filed anything in the district court or this court. Despite Judith Griffin's failure to appear, a "party cannot waive subject matter jurisdiction by its silence." *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n.6 (5th Cir. 1989) (per curiam). We may affirm on any basis supported by the record, *United States v. Taylor*, 482 F.3d 315, 318 (5th Cir. 2007), and we must review our own jurisdiction *sua sponte*. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In doing so, we conclude that

we lack subject matter jurisdiction over ACS and FKI's claims against Judith Griffin and, therefore, the district court's decision to dismiss the claim against Judith Griffin should be affirmed.

The second element of *Bombardier*'s three-part test requires that the Plan seek to recover funds that "belong in good conscience to the Plan." 354 F.3d at 356. ACS and FKI cannot show that the money in Judith Griffin's possession belongs in good conscience to the Plan, as the money awarded to Judith Griffin was not compensation for Larry Griffin's injury. The Order approving the settlement agreement awarded Judith Griffin $40,000.00 "per the terms of the Decree of Divorce," which ordered "that [she] receive $40,000.00 in regard to her claims for loss of consortium." *In re Marriage of Larry Griffin & Judith Griffin*, No. 2007-1807-DR, Final Decree of Divorce (307th Dist. Tex. Dec. 3, 2007). Although a loss of consortium claim is derivative of the injured party's claim, it is a separate cause of action. *McGovern v. Williams*, 741 S.W.2d 373, 374 (Tex. 1987).

Absent a term in the Plan Agreement specifying that the Plan can seek reimbursement out of an award for loss of consortium or out of an award made separately to a beneficiary's spouse—as is the case here—the Plan cannot seek to recover from money awarded to a member's spouse for such claims. This money was compensation paid *separately* to Judith Griffin for the loss of her husband's society and companionship, not as compensation to Larry Griffin for his injury. Because there is no evidence that Judith Griffin was a party to the Plan Agreement, we hold that under these facts, the Plan cannot recover from Judith Griffin; therefore, we affirm the district court's decision to dismiss the claim for equitable relief against Judith Griffin. We find it unnecessary to address ACS and FKI's claim that the district court erred in denying their motion for a default judgment against her, "since absence of jurisdiction

No. 11-40446

altogether deprives a federal court of the power to adjudicate the rights of the parties." *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005).[5]

Because we affirm the district court's decision to dismiss ACS and FKI's claims against Larry Griffin, the Trust, the Trustee, and Judith Griffin, we find it unnecessary to address FKI and ACS's additional arguments.

AFFIRMED.

---

[5] Even assuming we could address this argument on the merits, ACS and FKI failed to object to the magistrate's decision to deny their motion for a default judgment. Our review would therefore be limited to plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

Here, assuming arguendo there was an error, it would not have been plain. First, as discussed above, ACS and FKI's claim against Judith Griffin was not meritorious. Second, a party "is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (internal quotation marks and citation omitted). We have noted that "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Id.* (internal quotation marks and citation omitted). Therefore, it would not have been plain error to deny FKI and ACS's motion for a default judgment.