[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-10012

_____

D. C. Docket No. 06-00019 CV-ODE-2

ADMINISTRATIVE COMMITTEE FOR
THE WAL-MART STORES, INC. ASSOCIATES'
HEALTH AND WELFARE PLAN,

Plaintiff-Appellant,

versus

JOSHUA HORTON, a Minor,
DENICA JAYNE WERBER,
Individually, and as Conservator of Joshua Horton,
TROY MILLIKAN,
ABC BANK, REGIONS BANK,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 15, 2008)**

Before TJOFLAT, ANDERSON and COX, Circuit Judges.

ANDERSON, Circuit Judge:

The Administrative Committee for the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("the Administrative Committee") appeals the district court's grant of summary judgment in favor of Joshua Horton (a minor), Denica Jayne Werber (sued individually and in her capacity as Joshua's conservator), and Regions Bank. This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Specifically, the Administrative Committee brought suit under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (2000), seeking to enforce the reimbursement provisions of an employee health and welfare plan. The district court granted summary judgment in favor of Joshua, Ms. Werber, and Regions Bank, ruling that the Administrative Committee's requested remedy did not qualify as "other appropriate equitable relief" cognizable under § 502(a)(3). We reverse and remand for further proceedings.

We review de novo a district court's grant or denial of summary judgment. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate only when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Holloman, 443 F.3d at 836.

2

# I. BACKGROUND

The parties do not dispute the relevant facts in this case. At the age of fourteen, Joshua suffered permanent injuries when he was struck by an automobile. At the time, Joshua's mother, Ms. Werber, was a Wal-Mart employee and a participant in the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("the Plan"), and Joshua was a "covered person" under the Plan. Following the accident, the Plan paid $51,446.03 in medical benefits on Joshua's behalf.

Subsequently, Joshua, through Ms. Werber as his next friend, filed a tort claim in the Superior Court of Hall County, Georgia, against the third-party driver and received a $99,000 settlement. The superior court ordered division of the settlement as follows: $1,000 to Ms. Werber for any claims she might have had as Joshua's custodial parent; $33,000 as attorney's fees to Joshua's attorney; and $65,000 to be deposited into the Hall County Probate Court account for the benefit of Joshua. Pursuant to Georgia law, the probate court appointed Ms. Werber as Joshua's conservator. Ms. Werber, in her capacity as conservator, took possession of Joshua's portion of the settlement and deposited it in a trust account at Regions Bank.[1]

---

[1]For purposes of this appeal, we operate under the parties' mutual assumption that Joshua does not possess the disputed funds, but that instead Ms. Werber, in her capacity as conservator, acts as the equivalent of a trustee who possesses the funds on Joshua's behalf. We express no

Pursuant to the Plan's terms, any covered person who obtains a tort judgment or settlement must reimburse the Plan out of such funds for 100% of any benefits paid. Accordingly, the Administrative Committee sought to exercise the Plan's reimbursement provisions to recover $51,446.03 from the $66,000 awarded to Joshua and Ms. Werber. Initially, the Administrative Committee requested reimbursement, but Joshua and Ms. Werber refused. Subsequently, the Administrative Committee filed this suit to enforce the terms of the Plan, seeking what the Administrative Committee describes as "equitable relief" under ERISA §502(a)(3)(B). Specifically, the Administrative Committee prayed for restitution and for imposition of a constructive trust and an equitable lien to enforce ERISA and the terms of the Plan. Pending the outcome of this litigation, the disputed money remains in the Regions Bank account pursuant to a consent preliminary injunction.

## II. DISCUSSION

The Administrative Committee, as fiduciary of the Plan, seeks relief under ERISA §502(a)(3), which reads as follows:

opinion whether under Georgia law a conservator holds legal title to the minor's funds or whether the minor retains title while the conservator merely exercises limited control. In either event, because the Administrative Committee sued both Joshua and Ms. Werber, individually and in her capacity as conservator, any such distinction would not affect the outcome of this appeal.

4

(a) Persons empowered to bring a civil action

A civil action may be brought--
. . . .
(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . . .

29 U.S.C. §1132(a)(3) (2000).  The U.S. Supreme Court first analyzed this section's "other appropriate equitable relief" language in Mertens v. Hewitt Associates, 508 U.S. 248, 255-59, 113 S. Ct. 2063, 2068-70 (1993).  The Mertens Court rejected a broad interpretation of the phrase, instead reading "equitable relief" to include only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)."  Id.  The Court further narrowed the definition in Great West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708 (2002), a case with facts similar to those in the case at bar.

In Knudson, a woman who had been severely injured in an auto accident received medical benefits from her husband's employer's health and welfare plan. Id. at 207, 122 S. Ct. at 711.  Subsequently, the woman settled a tort claim arising out of the accident, and her portion of the settlement was paid directly into a

special needs trust.  Id. at 207-08, 122 S. Ct. at 711.  The insurer of the benefit plan sought full reimbursement from the settlement funds pursuant to a provision in the plan.  Id. at 207, 122 S. Ct. at 711-12.  When the woman refused to pay, the insurer sued her under ERISA §502(a)(3) to enforce the plan, seeking, inter alia, restitution, which it characterized as a form of equitable relief.  Id. at 208, 212, 122 S. Ct. at 712, 714.  The Supreme Court, however, characterized the insurer's claim as legal rather than equitable, noting that "not all relief falling under the rubric of restitution is available in equity."  Id. at 212, 122 S. Ct. at 714.

The Knudson Court explained that "whether [restitution] is legal or equitable in a particular case (and hence whether it is authorized by §502(a)(3)) remains dependent on the nature of the relief sought."  Id. at 215, 122 S. Ct. at 715.  For instance, a plaintiff might seek restitution at law in cases in which he "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him."  Id. at 213, 122 S. Ct. at 714 (quoting 1 Dan B. Dobbs, Law of Remedies § 4.2(1) (2d ed. 1993)).  Such claims, which impose " 'a merely personal liability upon the defendant to pay a sum of money,' . . . were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied)."  Id. (quoting Restatement

of Restitution §160 cmt. a (1936)).  On the other hand, "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."  Id.  In sum, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  Id. at 214, 122 S. Ct. at 714-15.  Because the Knudson plaintiff sued the injured woman for funds not in her possession (the funds resided in the special needs trust), the Court characterized the claim as legal, rather than equitable, and therefore unavailable under §502(a)(3).  Id. at 214, 122 S. Ct. at 715.

After Knudson, a circuit split developed over whether an ERISA benefit plan could ever use § 502(a)(3) to recover money from beneficiaries that refused to honor subrogation and reimbursement provisions.  See Sereboff v. Mid Atl. Med. Servs., Inc., __ U.S.__, 126 S. Ct. 1869, 1873 & n.1 (2006) (discussing the split).  On one side of the split, some circuits had held that all such claims are legal in nature because they arise from the breach of a contract to pay money.  See, e.g., Qualchoice, Inc. v. Rowland, 367 F.3d 638, 648-49 (6th Cir. 2004).  The Supreme Court, however, rejected this position and resolved the circuit split in Sereboff, a

case with facts very similar to <u>Knudson</u> and the instant case. In <u>Sereboff</u>, like in <u>Knudson</u> and here, an ERISA plan paid medical benefits to the victim of an accident. <u>Sereboff</u>, 126 S. Ct. at 1872. When the victim-beneficiary subsequently settled a tort claim, the plan sought to recover the medical benefits in accordance with the plan's subrogation and reimbursement clause, eventually suing for restitution under ERISA §502(a)(3). <u>Id.</u> at 1872-73. The <u>Sereboff</u> Court acknowledged that the plan "alleged breach of contract and sought money," but the Court stressed that the plan "sought its recovery through a constructive trust or equitable lien on a *specifically identified fund*, not from the [victim's] assets generally, as would be the case with a contract action at law."[2] <u>Id.</u> at 1874 (emphasis added). Unlike in <u>Knudson</u>, the disputed funds in <u>Sereboff</u> were in the possession of the defendant-beneficiary. <u>Id.</u> Based on this distinction, the <u>Sereboff</u> Court held that when a plan seeks restitution from a beneficiary who is in possession of particular, identifiable funds, such a suit sounds in equity and is cognizable under §502(a)(3).[3] <u>See id.</u> at 1874, 1877.

---

[2]The <u>Sereboff</u> Court further explained that "ERISA provides for equitable remedies *to enforce plan terms*, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise." <u>Sereboff</u>, 126 S. Ct. at 1874.

[3]Notably, the <u>Sereboff</u> Court explained that strict tracing rules need not apply for an equitable lien to properly attach to the settlement funds; that is, although the disputed funds had never actually been in the possession of the plan, the plan could seek to "recover" property that

Both Knudson and Sereboff involved suits where an ERISA plan sought restitution directly from a plan beneficiary, and the key distinction, which determined whether the suit qualified as "other appropriate equitable relief" under §502(a)(3), was whether the beneficiary-defendant possessed the disputed funds.[4] Neither case, however, addressed whether a benefit plan could use §502(a)(3) to recover a specifically identified fund in the possession of a third party, such as a trustee or conservator, by suing the third party directly. It is to this question that we now turn.

The Knudson Court expressly withheld opinion on this very question, noting that it need not decide "whether [the plan] could have obtained equitable

_____

belonged to it in good conscience under the plan agreement. 126 S. Ct. at 1874-76. The Court analogized the plan's claim to an "equitable lien by agreement" and cited a case from 1914 for "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets title to the thing." Id. at 1875-76 (quoting Barnes v. Alexander, 232 U.S. 117, 121, 34 S. Ct. 276 (1914)). Based on Barnes, the Court concluded that "the fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed." Id. at 1876 (citing 4 Spencer W. Symons, Pomeroy's Equity Jurisprudence § 1236 (5th ed. 1941)).

[4]In Parrott v. Popowski, an Eleventh Circuit panel emphasized that even when the defendant-beneficiary is in possession of the disputed funds, the suit sounds in equity only if the ERISA plan's language identifies "both the fund . . . out of which reimbursement is due to the plan and the portion due the plan." 461 F.3d 1367, 1373 (11th Cir. 2006). If, in contrast, the plan's language merely treats a beneficiary's tort recovery as a trigger allowing suit against the beneficiary generally, the claim is legal in nature. Id. at 1375; see also id. at 1373-74. In this case, the Administrative Committee's Plan sufficiently specifies that the Committee may only recover from any tort judgment or settlement the amount of benefits paid on the beneficiary's behalf. Thus, the language of the instant Plan identifies both the fund out of which reimbursement is due the Plan and the portion due the Plan, and accordingly satisfies the requirements of Parrott for the suit to sound in equity.

9

relief against . . . the trustee of the Special Needs Trust." 534 U.S. 220, 122 S. Ct. at 718. The Knudson dissent, however, while agreeing that the Court need not decide the issue, nonetheless observed that the majority's opinion "surely contemplates that a constructive trust claim would lie . . . if [the plan] had sued the trustee of the Special Needs Trust, who has 'possession' of the requested funds, instead of the [beneficiary], who do[es] not." Id. at 225, 122 S. Ct. at 721 (Ginsburg, J., dissenting).

Other authorities support Justice Ginsburg's conclusion. In yet another case interpreting the applicability of §502(a)(3), though in different factual circumstances, the Supreme Court rejected an argument that this section affords relief only against a "wrongdoer" who violates any provision of ERISA or the terms of the plan, and not against "innocent" third parties. Harris Trust & Savings Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 249-50, 120 S. Ct. 2180, 2189 (2000). The Harris Trust Court first noted that "[t]he common law of trusts, which offers a 'starting point for analysis [of ERISA] . . . [unless] it is inconsistent with the language of the statute, its structure, or its purposes,' plainly countenances" relief against innocent third parties. Id. at 250, 120 S. Ct. at 2189 (first alteration added) (internal citations omitted) (quoting Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 447, 119 S. Ct. 755 (1999)). For example,

10

when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty. The trustee or beneficiaries may then maintain an action for restitution of the property (if not already disposed of) or disgorgement of proceeds (if already disposed of), and disgorgement of the third person's profits derived therefrom.

Id. For another example of an equitable claim against a third party, the Court in Harris Trust cited its earlier pronouncement "in the analogous situation of property obtained by fraud":

"Whenever the legal title to property is obtained through means or under circumstances 'which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust.' "

Id. at 250-51, 120 S. Ct. at 2189 (quoting Moore v. Crawford, 130 U.S. 122, 128, 9 S. Ct. 447 (1889), which in turn quoted 2 John N. Pomeroy, Equity Jurisprudence § 1053 (1886)). The Restatement of Restitution takes a similar approach:

Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off.

11

In such a case, he can maintain a suit in equity to recover the property from the third person, at least if his remedies at law are not adequate.

Restatement of Restitution §160 cmt. g (1937). Moreover, the Supreme Court in Walker v. Brown, a case relied on in part by the Sereboff Court,[5] stated the following equitable principle:

It is well settled . . . "that a party may, by express [executory] agreement, create a charge or claim in the nature of a lien on real as well as on personal property of which he is the owner or in possession, and that equity will establish and enforce such charge or claim, not only against the party who stipulated to give it, but also against third persons, who are either volunteers, or who take the estate on which the lien is agreed to be given with notice of the stipulation."

165 U.S. 654, 664, 17 S. Ct. 453, 457 (1897) (quoting Pinch v. Anthony, 8 Allen 536, 90 Mass. 536, 1864 WL 3381 (1864)).

In the instant case, the Administrative Committee properly seeks equitable restitution of a specifically identifiable fund in possession of a defendant. As required by Knudson, the Administrative Committee asserts title and right to possession of particular property that is in the hands of Ms. Werber in her capacity as Joshua's conservator. The money Ms. Werber holds in trust has been identified as belonging in good conscience to the Administrative Committee by virtue of the Plan's terms, and the money can clearly be traced to a particular fund in the

---

[5]See Sereboff, 126 S. Ct. at 1877.

12

defendant's possession.

The fact that Ms. Werber holds the funds as a third party does not defeat the Administrative Committee's claim. Under <u>Knudson</u>, <u>Sereboff</u>, and the other authorities cited above, the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable <u>res</u> that can be restored to its rightful recipient. Had the Administrative Committee solely sued parties not in possession of the disputed funds, the claim would have failed under <u>Knudson</u> because it merely would have sought to impose personal liability on those parties. Instead, the Administrative Committee also sued Ms. Werber in her capacity as conservator of Joshua's special needs trust, seeking restoration of that particular fund in which it asserts a paramount interest. Accordingly, the Administrative Committee properly seeks "other appropriate equitable relief" cognizable under §502(a)(3), and the district court's grant of summary judgment must be reversed. The case is remanded to the district court for further proceedings not inconsistent with this opinion.

**REVERSED and REMANDED.**