HAYNES, Circuit Judge, joined by REAVLEY, DENNIS, and ELROD, Circuit Judges,
concurring in part and dissenting in part:
I concur with the portion of the judgment affirming the district court’s denial of relief against Judith Griffin and Larry Griffin.[1] I part ways with the majority *534 opinion’s reversal as to the Larry Griffin 142 Special Needs Trust (the “Trust”) and its trustee, Willie Earl Griffin (the “Trustee”). This appeal presents the narrow question of whether an ERISA plan, under § 502(a)(3), may exercise its subrogation right against a special needs trust established to benefit a disabled beneficiary. I submit that it cannot. Accordingly, I respectfully dissent from the majority opinion’s award of relief for the Appellants against the Trust and Trustee.
1. No Explicit “First Money” Right Exists Under ERISA
The majority opinion’s focus on the existence of an equitable lien by agreement between the Plan and Larry Griffin overlooks a critical fact: Congress has not provided ERISA plans a “first money” right to funds recovered by a beneficiary from a third party. A “first money” right provides a statutory first right to any funds recovered by beneficiaries from third-party tortfeasors. Many states have created such a right in the context of workers’ compensation benefits. For example, the Texas Labor Code specifically provides that “[t]he net amount recovered by a claimant in a third-party action shall be used to reimburse the insurance carrier for benefits, including medical benefits, that have been paid for the compensable injury.” Tex. Lab.Code Ann. § 417.002(a); see also Argonaut Ins. Co. v. Baker, 87 S.W.3d 526, 530 (Tex.2002) (explaining that “first money paid [to] or recovered by the employee, or his representatives, belongs to the compensation carrier paying the compensation, and until it is paid in full, the employee or his representatives have no right to any funds.” (alteration in original) (citation and quotation marks omitted)). In addition to Texas, over half of the states have provided a similar “first money” right to payments recovered by recipients of workers’ compensation funds.[2]
With regard to ERISA, Congress could similarly have provided plans with a “first money” right to any payments from third parties recovered by a plan’s beneficiaries.[3] Instead of providing such relief, however, Congress simply provided a general right to equitable relief to redress violations of or to enforce a plan’s terms, and specifically did not provide a contrac *535 tual or statutory right of recovery like the state workers’ compensation programs. See 29 U.S.C. § 1132(a)(3).
Allowing the Plan to reach through a special needs trust under ERISA § 502(a)(3) — thereby effectively providing the Plan a “first money” right — would disrupt the mechanism specifically established by Congress to provide for disabled individuals. Had Congress intended this consequence, it could have provided that a plan has a right to recover any medical benefits paid to a beneficiary from a third-party settlement or provided for specific enforcement of a contractual “first money” right. It did not, however, and we are not free to upset this delicate balance struck by Congress, particularly in the ERISA arena. See Mass. Mut. Life Ins. v. Russell, 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (noting that “[t]he six carefully integrated civil enforcement provisions found in § 502(a) ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly ... [, especially in light of] ERISA’s interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a ‘comprehensive and reticulated statute’ ” (citation omitted)). Accordingly, the relief the Appellants seek lies with Congress, not this court.
II. No “Possession” So No “Tracing”
The majority opinion posits that the Trust’s argument is one of “strict tracing” and then rejects such a tracing argument. The majority opinion submits that the money can be traced from Larry Griffin to the Trust and the Trustee, thereby making them proper targets for equitable relief. However, this is not a question of tracing, “strict” or otherwise. The tracing argument is unavailing as to the Trust and the Trustee because it does not work as to Larry Griffin — there is nothing to “trace” from Larry Griffin into the Trust.
The tracing cases cited in the majority opinion address situations where the funds sought are all or partially within the possession or control of the defendant-beneficiary but they have been “commingled” or “dissipated” such that the exact funds are not identifiable. See, e.g., Longaberger Co. v. Kolt, 586 F.3d 459, 469 (6th Cir.2009) (noting that a lien applied when the funds became identifiable); Gutta v. Standard Select Ins. Plans, 530 F.3d 614, 621 (7th Cir.2008) (noting that strict tracing is not required, and a plan may bring a suit even if the money is not specifically traceable to current assets). The problem with relying on these cases is that the money was once in the direct possession or control of the defendant-beneficiary (i.e., there is something to “trace”). Indeed, in Longaberger the beneficiary had more than “fleeting possession and control” — the money sat in the IOLTA account for several months and was therefore directly in the defendant-beneficiary’s constructive possession and control. 586 F.3d at 462. Here, as recognized in the settlement agreement and Trust documents, Larry Griffin never had possession of the funds. Because Knudson precludes a finding that the money could be traced from Larry Griffin into the Trust, there is nothing to “trace,” strictly or otherwise, in this case. See 534 U.S. at 214, 122 S.Ct. 708. Thus, neither Gutta nor Longaberger counsel in favor of liability for the Trust or the Trustee.
III. Supreme Court and Fifth Circuit Precedent Do Not Support Recovery from the Trust
A. Defendant’s Possession or Control
The Supreme Court has not directly considered whether equitable relief under § 502(a)(3) allows a plan to recover against a special needs trust or its trustee. The *536 Court discussed the issue in Knudson where an ERISA plan’s stop-loss insurer sued the Knudsons under § 502(a)(3) to recover medical benefits it had paid on the beneficiary’s behalf. Id. at 207, 122 S.Ct. 708. In accordance with the ERISA plan’s reimbursement provision, the insurer sought to recover from- the funds the beneficiary received from the underlying tortfeasor, which she had placed in a special needs trust. Id. In denying relief, the Court explained that “for restitution to lie in equity, the action must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant’s possession.” Id. at 214, 122 S.Ct. 708 (emphasis added). Because the settlement order showed that the funds were paid to a special needs trust and to the Knudsons’ attorney — neither of whom were named as defendants — the court concluded that the claim was legal, not equitable. Id. Ultimately, while Knudson left open the question of “whether petitioners could have obtained equitable relief against ... the trustee of the Special Needs Trust,” its reasoning (focusing on possession) is not supportive of recovery from the Trust. Id. at 220, 122 S.Ct. 708.
The Supreme Court later elaborated on the availability of § 502(a)(3) relief in Sereboff v. Mid Atlantic Medical Services, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006). In Sereboff, a plan successfully sought reimbursement for medical expenses paid on behalf of a beneficiary from the proceeds of the beneficiary’s settlement with a tortfeasor, which were held in an investment account. 547 U.S. at 359, 369, 126 S.Ct. 1869. For its part, Sereboff set forth four significant elements for seeking equitable relief in § 502(a)(3) claims: (1) the funds must be specifically identified by the plaintiff, (2) the funds must be in the possession and control of the defendant, (3) commingling of funds will not prevent recovery, and (4) the plaintiff need not trace back to the exact same tainted funds and show that they were in existence when the equitable lien agreement was entered into. Id. at 363-66, 126 S.Ct. 1869.[4] Importantly, the simple fact that a plan does not have to establish that the defendants possessed the original funds in question does not exempt the plan from having to show that the defendants actually possess the identified funds subject to the lien. Id. at 362-63, 126 S.Ct. 1869.[5]
Our court, following Knudson, declined to expand the scope of relief for ERISA plans under alternative theories of recovery, such as unjust enrichment, because “ERISA’s civil enforcement provision specifically and clearly addresses [the scope of available relief], thereby eschewing any possibility that a ‘gap’ exists in the statutory text that would permit us to employ *537 federal common law to create [remedies not provided for in the statute].” Coop. Benefit Adm’rs, Inc. v. Ogden, 367 F.3d 323, 330 (5th Cir.2004). Instead, we established a three-part test for determining whether the relief sought is equitable and, therefore, available under ERISA. See Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 356 (5th Cir.2003). It asks whether the plan seeks “to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the [p]lan, and (3) that are within the possession and control of the defendant beneficiary.” Id. (emphasis added). In Bombardier, the plan sued one of its beneficiaries and the beneficiary’s law firm— which held the proceeds from a third-party tort suit in trust on behalf of the beneficiary — to recover for medical expenses paid on the beneficiary’s behalf. Id. at 350. First, the court concluded that the law firm was a proper defendant because “Congress did not see fit ... to include a ... limitation on the set of proper defendants to a § 502(a)(3) action.” Id. at 354. Next, the court concluded that the suit was equitable in nature because all three elements of the test were met. Id. at 356. The plan sought (1) identifiable funds (2) that belonged in good conscience to the plan under the reimbursement provision. Id. The third element— that the beneficiary have control over and possession of the disputed funds — -was met because the “Plan’s participant ... ha[d] ultimate control over, and thus constructive possession of, the disputed funds” held in trust by his attorney on his behalf. Id. Because the “Plan [did] not seek to impose personal liability on either [the beneficiary] or his counsel,” the court concluded “that § 502(a)(3) authorize[d] the Plan’s claim for relief.” Id. at 358.
In Bombardier, we distinguished our prior opinion in Bauhaus USA Inc. v. Copeland, 292 F.3d 439 (5th Cir.2002), in which we held that funds deposited in a state court’s registry in anticipation of an interpleader action were not in the defendant-beneficiary’s actual or constructive possession or control. Bombardier, 354 F.3d at 356 (discussing Bauhaus, 292 F.3d at 445). Because the funds in Bauhaus were in the court’s registry and thus outside of the defendant’s control, we concluded that the plan was trying to impose personal liability on the defendant-beneficiary, and the action could not proceed under § 502(a)(3). Bauhaus, 292 F.3d at 444-45. The Bombardier court also distinguished Knudson, noting in that case, “the funds had been placed in a Special Needs Trust, as mandated by California law, to provide for the beneficiary’s care, and the trustee was totally independent of the plan beneficiary.” Bombardier, 354 F.3d at 356. Under Bauhaus and Bombardier, the panel correctly ruled that Larry Griffin did not have possession or “constructive possession” (and certainly not “control”) of the funds in the Trust.
In sum, Bombardier and Sereboff do not support a finding that the Trust and Trustee can be held liable.[6] In those cases, the money was actually in the defendant-beneficiary’s possession or control. Unlike here, the defendant-beneficiary in Bombardier had constructive possession and actual control of the settlement funds — a portion of which were placed in his lawyer’s IOLTA account. See 354 F.3d at 350-51. Similarly, in Sereboff, the funds were held in an investment account that was actually controlled by the plan’s beneficiary. 547 U.S. at 360, 126 S.Ct. 1869. *538 Thus, the facts of Sereboff and Bombardier are distinguishable from this case.
B. Failure to Join Hartford
An additional basis for concluding that the Appellants’ claim fails here rests on their failure to join Hartford CEBSCO as a defendant. Under Supreme Court and Fifth Circuit precedent, the Appellants must demonstrate that both the basis and nature of their claim are equitable. See Knudson, 534 U.S. at 213, 122 S.Ct. 708 (“[Wjhether [a remedy] is legal or equitable depends on the basis for [the plaintiffs] claim and the nature of the underlying remedies sought.” (alteration in original) (emphasis added) (citation and internal quotation marks omitted)); see also Sereboff, 547 U.S. at 363, 126 S.Ct. 1869. Although the Appellants’ basis for relief — a constructive trust — is equitable, the nature of the Appellants’ relief does not lie in equity because Hartford CEB-SCO — the entity that possesses and controls the annuity containing the funds at issue — was not joined as a defendant. Indeed, the Appellants’ remedy is legal in nature because it effectively seeks to impose personal liability on Larry Griffin, the Trust, and the Trustee “in an amount no less than $50,076.19,” regardless of the fact that none of these defendants has actual or constructive possession of the settlement funds. See Knudson, 534 U.S. at 214, 122 S.Ct. 708 (“The kind of restitution [sought], therefore, is not equitable — the imposition of a constructive trust or equitable lien on particular property— but legal — the imposition of personal liability for the benefits ... conferred upon [the beneficiaries].” (emphasis added)); see also Restatement (Third) of Restitution and Unjust Enrichment § 55 cmt. h (2011) (“If the claimant cannot show an equitable entitlement to specific property in the hands of the defendant, the underlying basis of the remedy is lost.”). Therefore, the failure to join Hartford CEBSCO as a defendant precludes the Appellants from establishing the equitable nature of the relief they seek because they cannot demonstrate that any of the named defendants has possession of the settlement funds.
C. Summary
In the end, Bombardier’s emphasis on a defendant-beneficiary’s actual or constructive possession should continue to be the law of this circuit because it appropriately balances the availability of equitable relief for ERISA plans with the important protections afforded to special needs trusts by Congress and the states as a means of providing for disabled individuals. Indeed, continuing to follow our approach in Bombardier would align us with many of our sister circuits, which emphasize the importance of the defendant-beneficiary or defendant-conservator currently having either actual or constructive possession of the funds at issue. See, e.g., Hall v. Liberty Life Assur. Co. of Boston, 595 F.3d 270, 275 (6th Cir.2010) (concluding that a plan seeking reimbursement could not impose an equitable lien on a beneficiary’s future social security disability benefits because the plan had no claim to the benefits until they were in the beneficiary’s possession); Longaberger, 586 F.3d at 469 (funds at issue were held by beneficiary’s attorney in an IOLTA account thereby giving defendant-beneficiary constructive possession and defendant-attorney actual possession of funds); Admin. Comm. for the Wal-Mart Stores, Inc. Assocs.’ Health & Welfare Plan v. Horton, 513 F.3d 1223, 1228-29 (11th Cir.2008) (disputed funds held in trust account over which defendant-conservator had possession and control); Dillard’s Inc. v. Liberty Life Assurance, 456 F.3d 894, 901 (8th Cir.2006) (defendant-beneficiary had received disputed funds *539 from Social Security Administration); Wal-Mart Stores, Inc. Assocs. ’ Health & Welfare Plan v. Wells, 213 F.3d 398, 401 (7th Cir.2000) (defendant had constructive possession of funds held by attorney); see also Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 223 (1st Cir.2010) (defendant-beneficiary had possession of the social security disability benefit funds sought by the plan).
IV. Special Needs Trusts
Finally, the majority opinion fails to account for a significant aspect of this case. The need to give effect to § 502(a)(3)’s provision of equitable relief for ERISA plans must be balanced with the need to give effect to the protections afforded to special needs trusts by Congress and the states. This is not a case in which the plan seeks to recover from only the beneficiary, see Knudson, 534 U.S. at 214, 122 S.Ct. 708, a lawyer’s IOLTA account, see Longaberger, 586 F.3d at 469, a state court’s registry, see Bauhaus, 292 F.3d at 441, a court-sanctioned investment account, see Serebojf, 547 U.S. at 360, 126 S.Ct. 1869, or any other usual source. Instead, the Appellants seek to recover, inter alia, against a special category of trusts-— special needs trusts. Permitting such recovery requires disregarding the special nature of these trusts, which the majority opinion does not consider apart from a short discussion at the end of the opinion. Giving special needs trusts appropriate consideration, however, leads to the inescapable conclusion that we must respect the protections afforded to them by Congress and the states.
A special needs trust is created for a disabled individual to allow a trustee to manage assets for the benefit of a disabled person. See 1 Stuart D. Zimring, Rebecca C. Morgan, Bradley J. Frigon & Craig C. Reaves, Fundamentals of Special Needs Trusts, § 1.04 (Matthew Bender ed., 2012). It has very specific requirements concerning its establishment, it is not available to everyone (for example, the beneficiary must be “disabled” under the definition provided in the Social Security Act), and disbursements from the trust may only be used for limited and specific purposes. See, e.g., 42 U.S.C. § 1396p(d)(4)(A) (discussing requirements of a special needs trust to ensure the assets it contains are excluded when determining a beneficiary’s Medicaid eligibility); Tex. Prop.Code Ann. § 142.005(b)(2) (explaining that the trust’s assets can only be used for expenses “reasonably necessary for the health, education, support, or maintenance of the beneficiary”). Also, the trust may not be established by the individual with the disability, but instead must be “established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court....” See 42 U.S.C. § 1396p(d)(4)(A). Further, it is critical that the beneficiary does not directly receive the money in hand — it must be paid to the trust for the use and benefit of the beneficiary. See Zimring et al., swpra, § 1.05; see also Tex. Prop.Code Ann. § 142.005(a) (providing that a court may direct the proceeds of a beneficiary’s judgment to be paid directly to a special needs trust). These requirements for establishing and maintaining special needs trusts ensure that they do not operate as a conduit through which to pass money to the beneficiary or to harbor tainted assets.
The primary purpose of special needs trusts is to allow beneficiaries to maintain eligibility for public benefits — such as Medicaid — while supplementing those benefits so that the beneficiary enjoys a better quality of life. See Zimring et al., supra, § 1.05. Indeed, Congress and the states sanction the use of special needs trusts as a lawful means of protecting assets to *540 achieve this purpose. See 42 U.S.C. § 1396p(d)(4)(A); Tex. Prop.Code Ann. § 142.005(g) (providing that the court may structure the terms of a trust as “necessary or appropriate to allow the beneficiary to be eligible to receive public benefits or assistance under a state or federal program”). This result can be achieved because a special needs trust is “irrevocable and ... there are limits on the source and use of funds, otherwise the trust principal would be considered available to the beneficiary, and the beneficiary would be disqualified from public benefits.” See Zimr-ING ET AL., supra, § 1.05.
Here, regardless of Larry Griffin’s motive, a special needs trust has been created. The Appellants do not dispute that Larry Griffin was adjudicated by the Texas courts to be disabled, and they do not dispute that a special needs trust was established pursuant to section 142.005 of the Texas Property Code and 42 U.S.C. § 1396p(d)(4)(A).[7] The Appellants also never contend that the Trust is merely a means to pass the money from the annuity directly into Larry Griffin’s hands. Furthermore, the Trust agreement provides that the Trust was “established at the specific direction of the Court, and therefore the assets directed to this trust by the Court should not be deemed to have been or to be available to the Beneficiary. This trust is established under the jurisdiction, at the direction, and with the specific approval of the Court without transfer of ownership of the settlement proceeds to the Beneficiary or his legal guardians.” (emphasis added). Accordingly, every indication is that the money was never in Larry Griffin’s possession but was passed directly to the Trust and is now used to care for Larry Griffin, who is disabled. Larry Griffin cannot decide when and how the money will be spent on his behalf because the Trustee, not Larry Griffin, has control of the money and may only use it for limited purposes. The fact that the beneficiary of a special needs trust explicitly does not have the right to either possession or control is crucial because it preserves his right to public benefits. See 42 U.S.C. § 1396p(d) (providing that assets contained in a special needs trust shall be excluded when determining eligibility for public benefits); see also Zimring et al., supra, § 1.05.
If Larry Griffin had unfettered access to the money from the annuity, the Appellants could recover the money from Larry Griffin or the Trust as Larry Griffin would have possession and the right to control the money. However, under the law of special needs trusts, the Trust is structured in such a way that the funds are used for Larry Griffin’s benefit, but Larry Griffin is not in possession of or control over the funds. Accordingly, in my view, this lack of possession renders the Appellants’ request for equitable relief under § 502(a)(3) inappropriate.
Furthermore, the two decisions from our sister circuits supporting the majority opinion’s holding do not give adequate consideration to the unique nature of special needs trusts. For example, the Eleventh Circuit in Horton provided that a plan could seek equitable relief against a beneficiary in her capacity as the trustee of her son’s special needs trust.[8] 513 F.3d at *541 1228-29 (noting that the plan has identified “particular property that is in the hands of [the beneficiary] in her capacity as ... conservator” of her son’s special needs trust). Similar to the majority opinion— which focuses on possession and tracing requirements — the court in Horton did not address the unique nature of special needs trusts, but instead focused on “whether a benefit plan could use § 502(a)(3) to recover a specifically identified fund in the possession of a third party, such as a trustee or conservator, by suing the third party directly.” Id. at 1227. The general nature of Horton’s approach is illustrated by the court’s statement that a suit in equity may be maintained against a third party when “‘property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaserf.]’ ” Id. at 1228 (quoting Restatement of Restitution § 160 cmt. g (1937)). While this may be the standard in other contexts, I note that it must be applied in a manner that accounts for the protections afforded to special needs trusts.[9]
Moreover, the Eighth Circuit’s opinion in Administrative Committee of Wal-Mart Stores, Inc. Associates’ Health & Welfare Plan v. Shank, 500 F.3d 834, 836 (8th Cir.2007), provides minimal guidance in this matter. Indeed, Shank addresses facts similar to those presented by this appeal and determines that equitable relief under § 502(a)(3) could he against a beneficiary’s husband in his capacity as trustee of a special needs trust. See id. at 836-37. Nonetheless, the court’s mention of the special needs nature of the trust at issue was completely devoid of any analysis of the special considerations attendant to such trusts and Congress’s express approval of them. The court provided only a brief discussion of whether the relief sought was equitable, see id. at 836, and instead focused on whether “appropriate” relief under ERISA constituted a full or pro rata reimbursement of funds paid by the plan, see id. at 836-40. Accordingly, although this case facially supports the majority opinion’s conclusion that recovery can lie against the Trust and Trustee, the lack of consideration it gives to special needs trusts undercuts its value in our analysis.
As explained above, this way of structuring a trust is sanctioned by Congress and the State of Texas as a way to provide a disabled individual with additional benefits while also permitting the individual to retain access to public benefits such as Medicaid. See, e.g., 42 U.S.C. § 1396p(d) (providing that the calculation of an individual’s eligibility for public benefits should not include assets held in a special needs trust); Tex. Prop.Code Ann. § 142.005(g). It is not a sham, and the Appellants have not contended that it is or that it fails the test for a special needs trust. In sum, the Trust represents a congressionally sanctioned means of providing Larry Griffin with additional benefits without interfering with his entitlement to public benefits.[10] The majority *542 opinion’s approach ignores this key distinction and raises the specter that all special needs trusts will be available for “equitable” relief to various creditors of beneficiaries of such trusts. Such a drastic approach should come from Congress, not the courts. From the majority opinion’s contrary conclusion, I respectfully dissent.

. The majority opinion concludes it is not necessary to reach a decision concerning Larry Griffin because it grants the Appellants the relief they seek against other defendants. In my view, the Supreme Court's holding in Great-W. Life & Annuity Insurance v. Knudson bars recovery against Larry Griffin in any event. See 534 U.S. 204, 214, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (holding that a plan's beneficiary — who was entitled to the benefits of a special needs trust — could not be held liable under § 502(a)(3) because he did not have possession of the funds at issue). Further, the Appellants have not identified any funds — including any potential payments from the Trust to Larry Griffin — related to the settlement that are in Larry Griffin's possession. Although there is some indication in the record that some monies were paid from the Trust to Larry Griffin, the Plan failed to develop any facts in this regard or to negate *534 the fact that the Trust is a special needs trust. The Appellants have failed to state a valid claim against Larry Griffin.

. See Ala.Code § 25-5-11; Alaska Stat. § 23.30.015; Ariz.Rev.Stat. Ann. § 23-1023(D); Cal. Labor Code § 3852; Colo.Rev. Stat. § 8-41-203; Conn. Gen.Stat. § 31-293; 19 Del.Code Ann. § 2363; Fla. Stat. § 440.39; Haw. Rev. Stat. § 386-8; Idaho Code Ann. § 72-223; Iowa Code § 85.22; Me.Rev.Stat. Ann. tit. 39-A, § 107; Md.Code Ann. Lab. & Empl. § 9-902; Mass. Gen. Laws Ann. ch. 152, § 15; Miss.Code Ann. § 71-3-71; Nev.Rev. Stat. § 616C.215; N.H.Rev.Stat. Ann. § 281-A:13; N.J. Stat. Ann. § 34:15-40; N.Y. Workers’ Comp. Law § 29; N.D. Cent.Code § 65-01-09; Or.Rev.Stat. § 656.593; R.I. Gen. Laws § 28-35-58; S.D. Codified Laws § 62-4-39; Tenn.Code Ann. § 50-6-112; Va.Code Ann. § 65.2-309; W. Va.Code Ann § 23-2A-1.

. Indeed, Congress has established such a remedy in other contexts. Specifically, Congress expressly provides a "first money” right for states to seek reimbursement of medical expenses paid on behalf of a Medicaid beneficiary from the beneficiary’s tort recovery. See Wos v. E.M.A. ex rel. Johnson, — U.S. —, 133 S.Ct. 1391, 1396, 185 L.Ed.2d 471 (2013) ("Congress has directed States, in administering their Medicaid programs, to seek reimbursement for medical expenses incurred on behalf of beneficiaries who later recover from third-party tortfeasors.”); see also 42 U.S.C. § 1396k(a)(l)(A) (eligibility for Medicaid assistance requires an individual "to assign the State any rights ... to payment for medical care from any third party”).

. The majority opinion notes that "[p]articularly significant here is [Sereboff s ] rejection of the [beneficiaries'] argument that [the plan's] claim was not equitable because equitable restitution requires a strict tracing of the tainted assets.” Op. at 526. Larry Griffin never had possession of the funds. Therefore, as discussed above, “strict” tracing is not the issue because there is nothing to trace.

. The Supreme Court recently re-examined Sereboff in US Airways, Inc. v. McCutchen,U.S. —, 133 S.Ct. 1537, 1545-47, 185 L.Ed.2d 654 (2013). That case addressed neither the issue of possession nor a special needs trust. Instead, it holds that equitable defenses that are contrary to the terms of the ERISA plan cannot defeat the plan's right to equitable reimbursement, a matter not at issue here. See id. at 1548. The opinion’s only mention of possession is as follows: “The suit requested an equitable lien on $66,866-the $41,500 in the escrow account [established by McCutchen’s attorney specifically in connection with the reimbursement lawsuit] and $25,366 more in McCutcheon’s possession.” Id. at 1543.

. The majority opinion implicitly overrules the third prong of the Bombardier test. I submit that this overruling is error as discussed more fully below.

. Before the panel, the Appellants argued that Chapter 142 of the Texas Property Code was preempted by ERISA, but they mention this argument only in passing before the en banc court. In any event, special needs trusts are expressly condoned by federal law.

. The beneficiary's son was a "covered person” under the ERISA plan and the plan sought reimbursement for medical expenses paid on behalf of the beneficiary's son after he recovered money from the tortfeasor and *541 placed it in a special needs trust. Horton, 513 F.3d at 1224, 1229.

. Horton is also distinguishable because the beneficiary had possession of the funds at issue in her capacity as the trustee of the special needs trust. 513 F.3d at 1224 n. 1 (noting that the beneficiary, “in her capacity as conservator, acts as the equivalent of a trustee who possesses the funds on [her son's] behalf”). Accordingly, unlike here where a non-beneficiary serves as the Trustee, the plan in Horton could establish defendant-beneficiary possession.

. The value of the Trust demonstrates it has a purpose well beyond any reimbursement issue. The annuity holding the funds against which the Appellants seek equitable relief has a value of approximately $148,000, which is *542 more than the approximately $50,000 sought in reimbursement. Putting the reimbursement issue aside, the Trust — through the annuity — holds almost $100,000 in assets that lie completely outside of Larry Griffin’s possession and control and that will be used solely by the Trustee for Larry’s benefit. This demonstrates that the Trust has a broader purpose than merely protecting the funds from the Appellants’ attempts to seek equitable relief.